890 P.2d 338

**BELL RAPIDS MUTUAL IRRIGATION COMPANY, Plaintiff–Appellant,**

v.

**Jill HAUSNER, Defendant–Respondent.**

No. 21284.

Supreme Court of Idaho,
Boise, November 1994 Term.

Feb. 24, 1995.

Justin R. Seamons, Twin Falls, for appellant.

Hollifield, Tolman & Bevan, Twin Falls, for respondent. William R. Hollifield argued.

JOHNSON, Justice.

This is a claim preclusion and issue preclusion case. We conclude that the claim is not precluded because it was not ripe for adjudication in the prior action. We also conclude that the issues are not precluded because they were not adjudicated in the prior action.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1967, Jill Hausner and several tenants in common signed an operating agreement (the operating agreement) with Bell Rapids Mutual Irrigation Company (Bell Rapids), a non-profit corporation. The operating agreement provided that Bell Rapids would operate and maintain the irrigation system of the tenants and that each tenant would pay the cost of operating and maintaining their irrigation system (the O & M assessments) and would purchase shares in Bell Rapids proportionate to their acreage. Bell Rapids operated and maintained the irrigation system and levied equal O & M assessments annually from 1973 through 1987.

In 1987, a landslide on the Snake River destroyed one of Bell Rapids's pumping sta-

tions. As a result, Bell Rapids could not deliver the expected amount of water to Hausner and her co-tenants. To address the anticipated shortfalls, rather than replace the pumping station, Bell Rapids instituted a plan by which shareholders who put their property in a federal set-aside program known as the Conservation Reserve Program (the CRP) would pay only sixty-five percent of the O & M assessments. Participants in CRP are paid not to farm a parcel for ten years. Prior to the landslide a shareholder was required to pay 100% of the O & M assessments even when their property was not irrigated.

A second group of shareholders put their land in the CRP and deeded over their shares to Bell Rapids, forfeiting the right to use the irrigation system at the end of the ten-year set-aside program. These shareholders were not required to pay the O & M assessments. In 1989, Bell Rapids agreed to pay a third group of shareholders, who entered the CRP and deeded their stock to Bells Rapids, $20.00 per acre and relieve them of the O & M assessments.

In 1988, Hausner put her property in the CRP without deeding over her stock, and Bell Rapids has since assessed her sixty-five percent of the O & M assessments. Hausner did not pay the O & M assessments from 1988 through 1992.

In April 1991, Bell Rapids sued Hausner (Hausner I) to collect the unpaid O & M assessments for 1988, 1989, 1990, and 1991. The trial court ruled that the O & M assessments for 1988, 1989, 1990, and 1991 were not equally and ratably levied against Hausner as required by I.C. § 42–2201, and that the assessments were therefore "illegal and uncollectible." The trial court also awarded Hausner attorney fees pursuant to I.C. §§ 12–120(1) and 12–120(3). Bell Rapids did not appeal.

In September 1993, Bell Rapids again sued Hausner (Hausner II), seeking to collect the O & M assessment for 1992, which was levied in the same manner as those for 1988–91, asserting three new theories for collecting the 1992 O & M assessment:

(1) I.C. § 30–308A, authorizing unequal assessments by non-profit corporations;

(2) the terms of the operating agreement; and

(3) the doctrine of unjust enrichment.

The trial court granted Hausner summary judgment, ruling that claim preclusion and issue preclusion barred Bell Rapids from its attempt to collect the O & M assessment for 1992. Bell Rapids appealed.

## II.

### CLAIM PRECLUSION DOES NOT BAR BELL RAPIDS'S CLAIM.

Bell Rapids asserts that claim preclusion does not bar its claim for collection of the O & M assessment for 1992. We agree.

In *Diamond v. Farmers Group, Inc.*, 119 Idaho 146, 804 P.2d 319 (1990), the Court stated that "a valid and final judgment rendered in an action extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Id.* at 150, 804 P.2d at 323.

In *Diamond*, the Court applied the formulation of the Restatement (Second) of Judgments § 24, for determining the scope of a "transaction":

What factual grouping constitutes a "transaction" … [is] to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at 150 n. 4, 804 P.2d at 323 n. 4.

Employing this test, the 1992 O & M assessment clearly arose out of the same transaction or series of transactions out of which Hausner I arose.

There is another limitation on the application of claim preclusion, however. In *Diamond*, the Court pointed out:

In *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 663 P.2d 287 (1983), we held the bar of *res judicata* [claim preclusion] not

applicable where matters raised in the second suit were not ripe for adjudication in the prior action.

*Id.* at 149, 804 P.2d at 322.

Under *Duthie,* we must determine whether the collection of the 1992 O & M assessment was ripe for adjudication in Hausner I. In *Duthie,* the Court referred to facts that occurred subsequent to the trial in the first case in holding that matters raised in the second case were not ripe for adjudication in the first case. 104 Idaho at 754, 663 P.2d at 290. It is also possible that the more correct focus for determining ripeness for adjudication is the time when the first case was filed. In this case, it is unnecessary for us to resolve this question. Using either the time when Bell Rapids filed Hausner I or the time when Hausner I was submitted to the trial court for decision, we reach the same result.

The record does not disclose when Bell Rapids made the 1992 O & M assessment, although in the three immediately prior years the assessments were made in March and were payable in April. Bell Rapids's complaint in Hausner II alleges that the major portion of the 1992 O & M assessment was due on April 1, 1992.

In December 1991, the parties filed stipulated facts in Hausner I. They submitted briefs to the trial court in January 1992. The trial court did not issue its decision until June 23, 1992. Applying the *Duthie* test of the time of trial as the time to determine ripeness, we conclude that the case was submitted to the trial court in Hausner I in January 1992, which was before the 1992 O & M assessment was ripe for adjudication. Therefore, the claim in Hausner II is not barred by claim preclusion.

### III.

### ISSUE PRECLUSION DOES NOT BAR THE LITIGATION OF THE ISSUES.

Bell Rapids asserts that issue preclusion does not bar the litigation of the issues in this case. We agree.

In *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 439, 849 P.2d 107,

112 (1993), the Court restated the five-part test for determining whether issue preclusion should apply. In the present case, the issues raised by Bell Rapids are not the same as those decided in Hausner I.

Hausner would have us characterize the issue in Hausner I as whether the O & M assessments were illegal. We reject this as the appropriate characterization. An assessment cannot be illegal in the abstract. The accurate characterization of the issues in Hausner I is whether the O & M assessments violated I.C. § 42–2201 or corporate common law. Applying this characterization, issue preclusion does not bar the litigation of the new issues raised in Hausner II.

In Hausner I, the trial court was not presented with the issues of the legality of the O & M assessments under I.C. § 30–308A or of Bell Rapids's right to recover under the doctrine of unjust enrichment, nor did the trial court decide these issues.

In Hausner I, the trial court stated in its decision that "[n]either the Articles of Incorporation ... nor any other document gives [Bell Rapids] any right to recover in this case greater than Idaho statutory or common law." Although the operating agreement was among the documents submitted to the trial court as part of the stipulated facts, there is no indication that Bell Rapids asserted the operating agreement as a basis for recovery in Hausner I, or that the trial court considered the operating agreement specifically in making the statement quoted above. Therefore, we conclude that the question whether the operating agreement provides a basis for collecting the O & M assessments was not raised or litigated in Hausner I.

### IV.

### CONCLUSION.

We vacate the trial court's summary judgment and remand the case to the trial court for further proceedings.

We award Bell Rapids costs on appeal. Concerning the award of attorney fees on appeal, we direct the trial court to consider the attorney fees incurred on appeal, if Bell Rapids prevails in the trial court on remand.

McDEVITT, C.J., SILAK, J., and McDERMOTT and WOODLAND, JJ. Pro Tem., concur.